## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROME JUNIOR WASHINGTON, | No. 4:21-CV-01746 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| SUPERINTENDENT SALAMON, *et al.*, | |
| Defendants. | |

### MEMORANDUM OPINION

### SEPTEMBER 7, 2022

Plaintiff Jerome Junior Washington is a serial *pro se* litigator in the Middle District of Pennsylvania.  He filed the instant *pro se* Section 1983[1] action in October 2021, claiming constitutional violations by numerous prison officials at the State Correctional Institution, Rockview (SCI Rockview), located in Bellefonte, Pennsylvania.  Presently pending are Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The Court will grant Defendants' motions.

## I.   BACKGROUND

Washington's complaint is a sprawling 43-page, single-spaced document that is both exceedingly difficult to understand and needlessly verbose.  His

---

[1]   42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

pleadings are so hopelessly complicated that he included an appendix to attempt to clarify the multitudinous sections of his complaint.[2]

Washington spends no less than 30 pages recounting what seems to be every perceived slight and policy violation by SCI Rockview staff during several months in 2021, verbatim repetition of his numerous grievances and Department of Corrections (DOC) policies, and unnecessary legal argument.[3]  In two paragraphs near the end of his complaint, Washington summarizes his claims as invoking the Eighth Amendment's prohibition against cruel and unusual punishment.[4] However, he also appears to assert that his First Amendment rights were violated when prison officials retaliated against him for filing grievances.[5]

Although Washington's allegations are rambling and difficult to parse,[6] he appears to base his Section 1983 claims on events that occurred primarily in the summer months of 2021.[7]  First, he contends that on June 25, 2021, he was

---

[2]  *See* Doc. 1-1.

[3]  *See generally* Doc. 1 ¶¶ 24-76.

[4]  *See id.* ¶¶ 77-78.

[5]  *See id.* ¶ 24.

[6]  As just one example, Washington alleges that Defendants are violating his Eighth Amendment rights through "failure to provide minimally adequate psychiatric and psychological services to diagnosed prisoners with mental illness in BMU(s) around RHU(s) guards untrain resulting in unnecessary deprivation of every day life necessities or result in unnecessary pain and suffering, around this maintenance of RHU(s) guards & inmates that exacerbate prisoners serious mental health illness including near-constant isolation with little if any human contact and plaintiff deprivation in of family visits and an failure to make available, maintain, and utilize adequate therapeutic psychological psychiatric alternative(s) to BMU(s); is an violation to constitutional laws or prisoners rights for the extended time periods around RHUs guard(s) or inmates that are confined in BMU(s) creates a substantial risk that those prisoners mental illnesses will be exacerbated and that their mental health will deteriorate."  Doc. 1 ¶ 78 (all punctuation and grammatical errors in original).

[7]  *See generally* Doc. 1 ¶¶ 24-76.

provided inadequate mental health care in the Behavior Management Unit (BMU) of SCI Rockview.[8]  This claim appears to be Washington's primary allegation.  He repeatedly asserts that he was "caged" for three hours that day, that unqualified Restricted Housing Unit (RHU) guards were permitted to work in the BMU, and that RHU inmates were inappropriately comingled with BMU inmates in the law library.[9]  Washington further complains that, as a BMU inmate with mental health problems, he did not receive the appropriate "structured" activities and programming to which he was entitled under relevant DOC policy.[10]

Washington next alleges that, on June 30, 2021, he was handcuffed (or at least correctional officers attempted to handcuff him) "like an animal" to a table during a Zoom visitation with family members.[11]  It is unclear whether Washington had the Zoom visit or whether it was canceled because he refused to be handcuffed, as his complaint is somewhat contradictory on this point.[12]  In any event, Washington claims that prison officials were retaliating against him for filing grievances, and that is why they tried to "cuff" him "like an animal" to humiliate him in front of his family.[13]

Washington also appears to assert a conditions-of-confinement claim.  At various sections of his pleading, he avers that he experienced issues with the

---

[8]  *Id.* ¶¶ 25, 27-29, 78.
[9]  *See id.*
[10]  *Id.* ¶¶ 25, 27, 28.
[11]  *Id.* ¶ 24.
[12]  *See id.*
[13]  *Id.*

cleanliness of his drinking water, improper ventilation, constant lighting in his BMU cell, cold temperatures, and rainwater leaking into his cell.[14]  Again, his complaint is difficult to decipher, but he seems to allege that he experienced some of these conditions on November 23, 2020, and some of them in July 2021.[15]

Washington names the following 14 defendants: former DOC Secretary John E. Wetzel; Superintendent Salamon; J. Rivello, DSFM; Major H. Haldeman; T. Miller, CCPM; M. Rowe, DSCS; Major G. Dyke; "LPM"—an unidentified official in charge of psychology staff at SCI Rockview; Psychiatrist Douglas Weber; BMU Unit Manager Knapp; Correctional Officers Anna, Steberger, and Hayles; and Sergeant John Doe (6 to 2 shift June 23, 2021 & June 30, 2021).[16]  He sues each Defendant in his or her individual and official capacities.[17]

Defendants move to dismiss Washington's Section 1983 claims in their entirety for failure to state a claim for relief.[18]  Their Rule 12(b)(6) motions are fully briefed and ripe for disposition.

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but

---

[14]   Doc. 1 ¶¶ 26, 30-32, 51, 57-59.
[15]   *Id.* ¶¶ 30-31, 57-59.
[16]   *Id.* ¶¶ 7-19, 23.
[17]   *Id.* ¶ 22.
[18]   *See generally* Docs. 19, 20.

whether the claimant is entitled to offer evidence to support the claims."[19]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[20]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[21]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[22]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[23]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[24]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[25]

---

[19]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[20]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[21]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[22]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[23]  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[24]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[25]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[26]

Because Washington proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[27]  This is particularly true when the *pro se* litigant, like Washington, is incarcerated.[28]

## III.   DISCUSSION

Washington's complaint, liberally construed, appears to allege two types of Eighth Amendment violations: (1) unconstitutional conditions of confinement, and (2) deliberate indifference to serious medical needs.  He also attempts to raise a First Amendment retaliation claim.  None of Washington's claims plausibly state a constitutional violation.

### A.    Eighth Amendment Conditions of Confinement

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort."[29]  Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or "inhumane treatment," such as deprivation of "identifiable human need[s]" like

---

[26]  *Iqbal*, 556 U.S. at 681.

[27]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

[28]  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

[29]  *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"food, warmth, or exercise."[30]   To prevail on an Eighth Amendment conditions-of-confinement claim, a plaintiff must show both objective and subjective elements.[31] Objectively, the prisoner must demonstrate that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation.[32]   Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."[33]   Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."[34]

As explained above, Washington avers that he experienced unclean drinking water, improper ventilation, constant lighting in his cell, cold temperatures, and rainwater leaking into his cell.[35]   Washington's claim fails however, because he does not adequately plead facts showing when he was subjected to these conditions, how long he experienced them,[36] if he experienced the conditions at the same time or on separate occasions, or whom he informed (if anyone) about most

---

[30]   *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

[31]   *See id.*

[32]   *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson*, 501 U.S. at 297).

[33]   *Id.* (citing *Farmer*, 511 U.S. at 834).

[34]   *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).

[35]   Doc. 1 ¶¶ 26, 30-32, 51, 57-59.

[36]   Duration of the deprivation is a critical factor in the conditions-of-confinement analysis.  *See Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (stressing that "*duration*" of confinement in a dry cell was crucial consideration in Eighth Amendment conditions-of-confinement claim).

of the issues.[37]  Without such critical factual assertions, the Court cannot determine whether Washington has stated an Eighth Amendment claim.

Courts must examine the totality of the circumstances when considering conditions-of-confinement claims.[38]  And a plaintiff must allege deliberate indifference by specific prison officials to those deprivations.  After all, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]"[39]  Thus, Washington's conditions-of-confinement claim will be dismissed but leave to amend will be granted.

## B.    Deliberate Indifference to Serious Medical Needs

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[40]  To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly plead "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[41]  A serious medical need is "one that has been

---

[37]   Washington claims that he informed Hayles and Knapp about the rainwater leak.  *See* Doc. 1 ¶¶ 57-59.

[38]   *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *id.* at 362-63 (Brennan, J., concurring).

[39]   *Farmer*, 511 U.S. at 837.

[40]   *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[41]   *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[42]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[43]  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[44]  Claims sounding in mere medical negligence will not suffice.[45]

Washington's Eighth Amendment claim regarding the mental health care he received in the BMU is difficult to follow.  He appears to base his allegations on events that occurred on June 25, 2021.  The gravamen of his claim seems to be that he did not receive the structured activity and programming that he was supposed to receive as a BMU inmate.  He also contends that unqualified RHU correctional officers are permitted to work in the BMU, and that RHU inmates improperly commingle with BMU inmates.  Additionally, he appears to take issue with his BMU "phase" designation.[46]

---

[42]  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

[43]  *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).

[44]  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

[45]  *Rouse*, 182 F.3d at 197.

[46]  Under DOC policy, there is multi-step phase system in place in the BMU that determines inmates' activity restrictions based on their progress within the BMU program.  *See* COMMONWEALTH OF PA., DEP'T OF CORR., POLICY STATEMENT 13.8.1 § 12(L)(4) (2022).

None of these allegations—alone or together—meet the high bar of showing constitutionally deficient medical treatment.  Washington has not alleged that prison officials are failing to provide mental health treatment, or that certain treatment has been sought and wrongly denied, or that medical treatment is being denied for non-medical reasons.  Nor do these allegations implicate some other Eighth Amendment infringement.

Rather, Washington's complaints appear to hinge on his interpretation of prison policies and procedures, claiming that BMU staff are violating these internal DOC guidelines.  This is a theme that runs throughout Washington's voluminous complaint.[47]  The problem, however, is that a violation of prison policy is not equivalent to a constitutional violation.  It is axiomatic that "a prison policy manual does not have the force of law and does not rise to the level of a regulation" and that "a violation of internal policy does not automatically rise to the level of a Constitutional violation."[48]

None of Washington's numerous complaints about his treatment in the BMU rise to the level of a constitutional violation.  And they certainly do not establish deliberate indifference to serious medical needs.  Washington's allegations, rather,

---

[47] *See, e.g.*, Doc. 1 ¶¶ 25, 26, 29, 33, 34, 43, 45.

[48] *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *see Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017); *Williamson v. Garman*, No. 3:15-CV-1797, 2017 WL 2702539, at *6 (M.D. Pa. June 22, 2017); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension").

primarily concern SCI Rockview staff's compliance (or alleged lack thereof) with internal prison policies.  Any Eighth Amendment claim based on this faulty reasoning, including medical deliberate indifference, must be dismissed.

### C.    First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[49]  To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[50]

In a single paragraph in his complaint, Washington alleges that several Defendants retaliated against him for filing grievances by attempting to handcuff him prior to a Zoom visitation with family.  This First Amendment claim fails because Washington has not identified an adverse action taken against him that is sufficient to deter a person of ordinary firmness from exercising their constitutional

---

[49]  *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

[50]  *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

rights.  Although the threshold for an adverse action in the retaliation context is relatively low,[51] attempting to handcuff a prisoner—a normal occurrence for an inmate incarcerated in a state correctional institution—prior to a Zoom visitation simply does not rise to the level of a "more than *de minimis*" adverse event.[52] Washington cannot state the second element of a retaliation claim, so that claim must be dismissed.

### D.   Official Capacity Claims

Washington sues all Defendants in their individual and official capacities. However, the Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[53]  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[54]  States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[55]  There are two

---

[51]   *See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).

[52]   *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee*, 436 F.3d at 170); *cf. Cordero v. Warren*, 612 F. App'x 650, 653 (3d Cir. 2015) (nonprecedential) (finding that prospect of *losing visitation* with close family member for "six months or more" could rise to the level of an adverse action).

[53]   U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

[54]   *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

[55]   *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for prospective injunctive and declaratory relief."[56]

Washington's response to Defendants' assertion of Eleventh Amendment sovereign immunity is—once again—disjointed and nearly impossible to comprehend.  He forays into irrelevant subject areas like qualified immunity, *Bivens* claims, and due process rights.[57]  From his complaint, it appears that Washington seeks prospective injunctive relief "to stop the constitutional violations described" and "to ensure that DOC prisoners/plaintiff receive constitutionally adequate mental health care."[58]

However, as Washington has failed to set forth any plausible constitutional violations concerning any Defendant, the official capacity claims for prospective injunctive relief likewise fail.

### E.    Claims Against Defendant Douglas Weber

Washington names psychiatrist Douglas Weber as a defendant but does not include any allegations against him.  It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[59]  Rather, a Section 1983 plaintiff must aver facts that demonstrate "the

---

[56] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

[57] *See* Doc. 36 at 21-22.

[58] Doc. 1 ¶ 79(B).

[59] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

defendants' personal involvement in the alleged misconduct."[60]  Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[61] Dr. Weber correctly asserts that, because Washington has failed to plead personal involvement, any claim against him must be dismissed.

However, Dr. Weber also contends that Washington failed to pursue any administrative remedy against him through the DOC's grievance system.  Failure to exhaust administrative remedies is an affirmative defense rather than a pleading requirement, and necessarily will require a factual determination that goes beyond the complaint.[62]  The Court therefore cannot grant a Rule 12(b)(6) motion on this basis.  Rather, the Court is required to "notify the parties that" it "will consider exhaustion in its role as a fact finder under *Small*[ *v. Camden County*, 728 F.3d 265 (3d Cir. 2013)]" and provide Washington an "opportunity to respond."[63]

Thus, Washington will have the opportunity to respond to Dr. Weber's failure-to-exhaust challenge.  Washington is on notice that the Court will consider administrative exhaustion in its role as a factfinder.  Moreover, because the exhaustion issue may be dispositive as to the validity of any Section 1983 claim

---

[60]  *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).
[61]  *Id.* (quoting *Rode*, 845 F.2d at 1207).
[62]  *See Paladino v. Newsome*, 885 F.3d 203, 208, 211 (3d Cir. 2018).
[63]  *Id.* at 211.

against Dr. Weber, no leave to amend will be granted with respect Washington's claims against Dr. Weber unless the exhaustion challenge is resolved in Washington's favor.

## IV.   LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[64]  The Court will grant Washington leave to amend his Eighth Amendment claims to cure the deficiencies more fully explained above. The First Amendment retaliation claim will be dismissed with prejudice because Washington's allegations are insufficient as a matter of law to implicate a constitutional violation.

Following resolution of the administrative exhaustion issue concerning Dr. Weber, Washington may file an amended complaint in conformity with this Memorandum.  However, Washington must comply with the following guidance, or the Court will strike his amended pleading:

- The amended complaint should be a stand-alone document, complete in itself and without reference to any previous pleading.

- The amended complaint should set forth the claim or claims in *short, concise, and plain statements*, and in sequentially numbered paragraphs.

- Washington need not, and *should not*, include word-for-word recitation of his grievances or of prison regulations or policies, nor should he include legal argument.

---

[64]   *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

- Washington may not include claims (or allegations related to claims) that have been dismissed with prejudice in this Memorandum.

- Washington must name proper defendants and *specify the offending actions taken by a particular defendant*.  Washington is admonished that he must comply with Federal Rule of Civil Procedure 20(a)(2) if attempting to join multiple defendants in a single action.

## V.    CONCLUSION

Based on the foregoing, the Court will grant Defendants' motions (Docs. 19, 20) to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Limited leave to amend will be granted.  An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

16