IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROME JUNIOR WASHINGTON, | No. 4:21-CV-01746 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| SUPERINTENDENT SALAMON, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

DECEMBER 15, 2023

Plaintiff Jerome Junior Washington is a serial litigator who is well known in the Middle District of Pennsylvania. He filed the instant *pro se* Section 1983[1] action in 2021, claiming constitutional violations by numerous prison officials at the State Correctional Institution, Rockview (SCI Rockview), located in Bellefonte, Pennsylvania. After his initial complaint was dismissed, Washington filed an amended complaint targeting a single medical provider. Presently pending is that remaining Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendant's motion and dismiss this case with prejudice.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I. BACKGROUND

Plaintiff Jerome Junior Washington is serial *pro se* litigant who has filed dozens of frivolous lawsuits in the federal district courts. He is currently incarcerated at SCI Forest.[2] He has been litigating the instant case against SCI Rockview officials since October 2021 but has failed to progress past the pleading stage. This is due, in no small part, to Washington's overly complicated, needlessly verbose, and often indecipherable pleadings.[3] As the Court noted in its September 27, 2022 Memorandum Opinion, Washington's "pleadings are so hopelessly complicated that he included an appendix to attempt to clarify the multitudinous sections of his complaint."[4]

After expending significant judicial time and resources reviewing the sufficiency of Washington's original complaint, the Court determined that Washington had failed to state a claim for relief against any of the 14 named Defendants.[5] The Court dismissed Washington's Eighth Amendment claims concerning conditions of confinement and deliberate indifference to serious medical needs without prejudice and dismissed his First Amendment retaliation claim with prejudice.[6] The Court also dismissed his official capacity claims for

---

[2] *See* Doc. 82 at 1.
[3] It is also a product of Washington's numerous blown deadlines and requests for enlargement of time. *See, e.g.*, Docs. 46, 47 & n.5, 48, 49, 52, 53, 57, 59, 63, 64, 67, 70, 72, 73, 75, 78, 81, 83.
[4] Doc. 50 at 2.
[5] *Id.* at 6-16.
[6] *See* Doc. 51 ¶ 1.

2

prospective injunctive relief because he had failed to state an underlying constitutional violation.[7]  Finally, the Court noted that Washington had failed to allege any unconstitutional conduct by defendant Dr. Weber, and that Dr. Weber was also raising the defense of failure to exhaust administrative remedies.[8] Washington was granted leave to amend his Eighth Amendment claims and was given an opportunity to respond to Dr. Weber's failure-to-exhaust challenge.[9] Washington properly responded to Dr. Weber's exhaustion defense, providing documents related to grievance number 882433 and its appeal to final review.[10]

In its initial dismissal, the Court gave Washington specific instructions regarding amendment and explicitly warned him that failure to comply with those instructions would result in the Court striking his amended pleading.[11]  After Washington submitted an amended complaint targeting only Dr. Weber,[12] the Court *sua sponte* gave Washington another opportunity to include all his Eighth Amendment claims in a comprehensive amended complaint.[13]

Washington eventually submitted a proposed comprehensive amended complaint,[14] but that filing violated nearly all the guidelines the Court had

---

[7]  Doc. 50 at 12-13.
[8]  *Id.* at 13-14.
[9]  *Id.* at 14-16.
[10]  *See* Docs. 54-5, 55.
[11]  *See* Doc. 50 at 15-16.
[12]  *See generally* Doc. 58.
[13]  *See* Doc. 59.
[14]  Doc. 67.

provided. The proposed amended complaint had somehow *increased* in size, even though one of Washington's claims had been dismissed with prejudice and he was given specific pleading directions regarding his two remaining Eighth Amendment claims. Those instructions included that he must adhere to Federal Rule of Civil Procedure 8's requirements of providing "a short and plain statement of the claim" showing entitlement to relief and that "[e]ach allegation must be simple, concise, and direct."[15] Washington's proposed amended complaint, however, spanned 48 single-spaced, handwritten pages—5 more than his original—and contained at least 218 paragraphs.[16]

The Court reviewed, in detail, Washington's numerous drafting errors. First, and most importantly, Washington's proposed amended complaint was anything but "short" and "concise." Rather, it was 48 pages long, contained at least 218 paragraphs, and was even lengthier than his original filing. Second, Washington tried to reassert a First Amendment retaliation claim that had been dismissed with prejudice.[17] Third, Washington failed to specify the offending action taken by particular defendants, and instead again tried to level allegations by generally claiming that "defendants" took some sort of collective, unconstitutional action.[18]

---

[15] FED. R. CIV. P. 8(a)(2), (d)(1).
[16] *See generally* Doc. 67.
[17] *See* Doc. 51 ¶ 1(b); Doc. 67 at 9-11 (the Court cites to the CM/ECF electronic pagination rather than the paragraph numbers of the amended complaint).
[18] *See, e.g.*, Doc. 67 at 9.

Fourth, Washington included legal argument and lengthy, word-for-word recitations of prison regulations or policies despite being expressly instructed not to do so.[19]  Fifth, Washington once more attempted to base various Section 1983 claims on perceived violations of prison policy,[20] which the Court had already admonished does not state a claim for relief.[21]  Finally, and quite strangely, Washington interpreted "short and plain statement" to mean that he should sever his sentences into multiple fragments rather than to simply clarify his complaint to make it more concise and intelligible.[22]

Accordingly, on March 3, 2023, the Court struck the proposed amended complaint for violating Federal Rule of Civil Procedure 8 and this Court's explicit instructions.[23]  The Court gave Washington one final opportunity (and 21 days) to file a comprehensive amended complaint that complied with the Federal Rules of Civil Procedure and the Court's prior orders.[24]  The Court additionally warned that, if Washington did not timely file a proper comprehensive amended complaint, his case would proceed on the amended complaint filed against defendant Dr. Weber only.[25]

---

[19]  *See, e.g., id.* at 11, 12-13, 14, 15, 32, 33.
[20]  *See, e.g., id.* at 26-27.
[21]  *See* Doc. 50 at 9-11.
[22]  *See, e.g.,* Doc. 67 at 17-19.
[23]  *See* Doc. 70 at 6 ¶ 1.
[24]  *See id.* ¶¶ 2-3.
[25]  *Id.* ¶ 4.

The deadline for an appropriate comprehensive amended pleading came and went without any action or correspondence from Washington. Accordingly, on April 6, 2023, the Court issued an Order stating that, as previously warned, the case would proceed on Washington's amended complaint (Doc. 58) against Dr. Weber only.[26] The Order also gave Dr. Weber 30 days to respond to the amended complaint.[27]

Dr. Weber complied, filing a timely motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[28] and, within the time permitted by Local Rule of Court 7.5, a supporting brief.[29] Washington filed an untimely brief in opposition,[30] which the Court treated as timely filed.[31] No reply has been filed, and the time in which to do so has passed, so Dr. Weber's motion to dismiss is ripe for disposition.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[32] The court must accept as true the factual allegations in the complaint and draw all

---

[26] Doc. 71 at 1 ¶ 1.
[27] *Id.* at 2 ¶ 2.
[28] Doc. 74.
[29] Doc. 79.
[30] Doc. 82.
[31] *See* Doc. 83.
[32] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver,* 82 F.3d 63, 66 (3d Cir. 1996).

reasonable inferences from them in the light most favorable to the plaintiff.[33] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[34]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[35] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[36] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[37] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[38] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[39]

Because Washington proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held

---

[33] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[34] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[35] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[36] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[37] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[38] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[39] *Iqbal*, 556 U.S. at 681.

to less stringent standards than formal pleadings drafted by lawyers[.]"[40]  This is particularly true when the *pro se* litigant, like Washington, is incarcerated.[41]

## III. DISCUSSION

Washington's amended complaint asserts an Eighth Amendment claim of deliberate indifference to serious medical needs against Dr. Weber.  Although Washington briefly alleges that his Fourteenth Amendment rights were also violated,[42] it appears that this constitutional amendment is cited only with respect to applying the Eighth Amendment's protections against cruel and unusual punishment to the states.[43]  No other Fourteenth Amendment violation is plausibly alleged or discussed.

Dr. Weber contends that Washington's amended complaint fails to state an Eighth Amendment medical indifference claim.  The Court agrees.

### A. Deliberate Indifference to Serious Medical Needs

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[44]  To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly plead "(i) a serious

---

[40] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[41] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[42] *See* Doc. 58 ¶¶ 10, 34-35.
[43] *See id.* ¶¶ 41-42 (alleging that Dr. Weber "violated Washington's constitutional rights, under the Eighth Amendment . . . as applied to the state by the Fourteenth Amendment").
[44] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[45] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[46]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[47] Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[48] Claims sounding in mere medical negligence will not suffice.[49]

Washington alleges that he suffers from schizoaffective disorder with hallucinations, post-traumatic stress disorder, Bipolar-1 disorder, suicidal ideations, attention deficit disorder (ADD), and anti-social personality disorder.[50] He asserts that, due to his serious mental illnesses,[51] he was housed in the Behavior Management Unit (BMU) at SCI Rockview from 2020 through the time of filing

---

[45] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
[46] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).
[47] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[48] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[49] *Rouse*, 182 F.3d at 197.
[50] Doc. 58 ¶¶ 17, 26, 48.
[51] *Id.* ¶¶ 31, 46, 49, 52.

his amended complaint because he "currently presents safety and/or security needs that cannot be accommodate[d] by a less restrictive housing unit[.]"[52]

Washington avers that Dr. Weber oversees the BMU and the psychiatric services provided there.[53] He appears to allege that Dr. Weber provided constitutionally deficient mental health care in the following ways: (1) "second-guess[ing]" treatment for Washington's ADD by prescribing different medication(s) than Washington wanted or previously had been prescribed[54]; and (2) failing to comply with department policies "13.1.1, 13.8.1, and 13.2.1" regarding Washington's mental health treatment.[55] None of these allegations—alone or together—meet the high bar of plausibly pleading constitutionally deficient medical care.

In his first claim of medical indifference, Washington appears to disagree with the ADD medication or treatment that Dr. Weber prescribed. He alleges that Dr. Weber, instead of providing the ADD medication that Washington wanted and was previously taking, prescribed medication based on his "own opinion" and choice of medications.[56] He asserts that he wants a "better medical opinion from [Dr. Weber]."[57] These allegations do not implicate a constitutional violation. It is

---

[52] Id. ¶¶ 47, 51.
[53] Id. ¶ 5.
[54] Id. ¶¶ 19, 35-40.
[55] Id. ¶¶ 55-57.
[56] See id. ¶¶ 36-39.
[57] Id. ¶ 61.

well settled that mere disagreement with a medical provider's professional judgment or treatment plan does not state an Eighth Amendment violation.[58]

Washington's second claim appears to hinge on prison policy, asserting that Dr. Weber's treatment was not in accord with some unspecified aspect of the Pennsylvania Department of Corrections Policy Statements 13.1.1 (Management and Administration of Health Care), 13.2.1 (Access to Health Care), and 13.8.1 (Access to Mental Health Care). First, as the Court has previously explained on multiple occasions,[59] violation of a prison policy—a recurrent theme in Washington's pleadings—does not, in itself, state a constitutional infringement. It is axiomatic that "a prison policy manual does not have the force of law and does not rise to the level of a regulation" and that "a violation of internal policy does not automatically rise to the level of a Constitutional violation."[60]

---

[58] *See Lanzaro*, 834 F.2d at 346 (explaining that "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation"); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("Because 'mere disagreement as to the proper medical treatment' does not 'support a claim of an eighth amendment violation,' when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." (internal citation omitted)); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

[59] *See* Doc. 70 at 4 (citing Doc. 1 ¶¶ 26-27); Doc. 50 at 9-11.

[60] *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *see Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017); *Williamson v. Garman*, No. 3:15-CV-1797, 2017 WL 2702539, at *6 (M.D. Pa. June 22, 2017); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension").

Second, Washington appears to be citing generally to extremely large prison policies, which span 166 pages, 332 pages, and 309 pages, respectively. Simply alleging that Dr. Weber's treatment somehow violated these internal prison policies does not in any way state a viable medical indifference claim. Although Washington has been admonished that he is not to quote large portions of prison policy in his pleadings, he must do more than merely claim that Dr. Weber violated DOC policy. At the very least, Washington must describe the conduct by Dr. Weber that he believes rises to the magnitude of a constitutional violation.

Third, Washington never grieved any claim regarding alleged violation of prison policy by Dr. Weber. The sole subject of his grievance against Dr. Weber, which he incorporates by reference into his amended complaint,[61] is the ADD medication issue.[62] Consequently, even if Washington has plausibly stated a claim with respect to policy violations, which he has not done, that claim would be barred for failure to exhaust administrative remedies.

At other points in his amended complaint, Washington alleges—in conclusory or incomplete fashion—that there was an unspecified policy, practice, or procedure at SCI Rockview that violated his Eighth Amendment rights.[63]

---

[61] *See* Doc. 58 ¶ 11.
[62] *See* Doc. 54-5 at 1. Washington's amended complaint, in fact, contains multiple verbatim passages from grievance number 882433. *Compare* Doc. 58, *with* Doc. 54-5 at 1.
[63] *See* Doc. 58 ¶ 53 ("Such policies, practices and procedures, include without limitation . . ." (ellipsis in original)); *id.* ¶ 44 ("Washington seek [sic] relief; [sic] of [Dr. Weber]'s policies, practices, and procedures systemically; [sic] in violation to [sic] Washington's Eighth Amendment rights.")

12

Nowhere in his amended complaint, however, does Washington plausibly plead a policy or procedure imposed by Dr. Weber that violated his constitutional rights. Washington's bald allegations of a purported unconstitutional policy or practice, without providing any supporting facts or even identifying the policy at issue, are insufficient to state a claim for relief. Accordingly, the Eighth Amendment claim against Dr. Weber must be dismissed pursuant to Rule 12(b)(6).

### B. Official Capacity Claim

Washington again sues Dr. Weber in his official capacity.[64] However, the Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[65] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[66] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[67] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting

---

[64] *See* Doc. 58 ¶ 6.
[65] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).
[66] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).
[67] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for prospective injunctive and declaratory relief."[68]

From his amended complaint, it appears that Washington seeks prospective injunctive relief "to stop the constitutional violations described" and "to ensure that DOC prisoners like Washington receive constitutionally adequate mental health care."[69] However, as fully explained above, Washington has failed to set forth any plausible constitutional violations against Dr. Weber. Thus, Washington's official capacity claim for prospective injunctive relief likewise fails to state a claim and must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court further observes that Washington has been transferred to SCI Forest and presumably is no longer under the psychiatric care of Dr. Weber. Thus, any request for prospective injunctive relief is likely moot.[70]

### C. Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[71] Further leave to amend will be denied because Washington has failed to cure the numerous deficiencies with his complaint even

---

[68] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).
[69] Doc. 58 ¶ 65(B).
[70] *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993).
[71] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

after "amendments previously allowed."[72]  Washington is an experienced *pro se* litigant who has been pursuing this case for over two years but has failed to progress beyond the pleading stage.  He has been provided countless opportunities (and extensions of time) to amend his pleadings but has continually failed to state a claim upon which relief may be granted.  Thus, the Court will dismiss this case with prejudice.

## IV.   CONCLUSION

Based on the foregoing, the Court will grant Defendant's motion (Doc. 74) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dismissal will be with prejudice.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[72] *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").